ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>G&Y GENERAL CONTRACTOR, INC., a California corporation,<br><br>　　　　　　Defendant. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>**1. MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS**<br><br>**2. SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT**<br><br>[29 U.S.C. §§ 185, 1132(a)(3), 1132(g)(2) and 1145] |

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

## JURISDICTION AND VENUE

1.　　This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer to enforce of the terms of collective

473566.3

1

bargaining agreements and plan trust agreements to (a) recover fringe benefit contributions and related damages due by the employer on behalf of its employees (Claim 1) and (b) compel the employer to produce records for audit to determine if additional amounts are due (Claim 2).  This Court has jurisdiction pursuant to sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(g)(2) and 1145; ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3); and section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.  Pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

## PARTIES

2.  Plaintiff ("CLTF") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Laborers Annuity Plan for Southern California; Laborers Vacation, Holiday and Sick Pay Trust Fund; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs Trust Fund (collectively "Trust Funds").  The Trust Funds are express trusts created by written agreements; employee benefit plans within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3); and multi-employer plans within the meaning of ERISA section 3(37)(A), 29 U.S.C. § 1002(37)(A).  The Trust Funds exist pursuant to ERISA and LMRA section 302, 29 U.S.C. § 186. CLTF and

the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

3.   CLTF is informed and believes, and on that basis alleges, that defendant G&Y General Contractor, Inc. ("Employer") is a corporation organized and existing under the laws of the State of California; has a principal place of business in the City of Porter Ranch, County of Los Angeles, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

## AGREEMENTS

4.   Various public entities in Southern California have entered into project labor agreements (also known a project stabilization agreements, continuity of work agreements and community benefits agreements) with unions and employer associations establishing terms and conditions of work on public works projects.  In each case, by, and as a condition of, performing work on such a project, contractors must abide by the terms of the applicable project labor agreement, including terms related to the payment of employee wages and fringe benefits.  The Employer performed work on certain such public works projects, including at least those of the Lynwood Unified School District (governed by the Lynwood Unified School District Continuity of Work Agreement); the Norwalk-La Mirada Unified School District (governed by the Norwalk-La Mirada Unified School District Community Benefits Agreement); the Mountain View School District (governed by the Mountain View School District Project Labor Agreement); and the Azusa Unified School District (governed by the Azusa Unified School District Project Labor Agreement).  Upon information and belief, CLTF further alleges that the Employer might have worked on other project labor agreements containing terms and conditions related to the

payment of employee wages and fringe benefits, including but not limited to one of the Pasadena Unified School District known as the Pasadena Unified School District Continuity of Work Agreement. The project labor agreements governing work performed by the Employer are referred to hereinafter collectively as the "Project Labor Agreements." The Project Labor Agreements incorporate by reference the collective bargaining agreements of various labor unions that are signatory to them, including certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements.  The Construction Master Labor Agreements include but are not limited to one known as the Southern California Master Labor Agreement.

5. Pursuant to the Construction Master Labor Agreements, employers become bound to the terms and conditions of the various trust agreements of the Trust Funds ("Trust Agreements").

6. The Employer is, and at all relevant times was, also bound to certain subscription agreements ("Subscription Agreements").  Each Subscription Agreement relates to a specific construction project that is identified in it and requires the Employer to pay fringe benefit contributions to the Trust Funds on behalf of the Employer's apprentice employees who perform work on the project. Such subscription agreements include but are not limited to ones for the Employer's work on: (a) a project of the Santa Monica Community College District known as the *Santa Monica Community College Main Campus – Classroom & Building Remodel* project; (b) a project of the Simi Valley Unified School District known as the *Sinaloa MS Shade Structures* project; (c) a project of the Santa Monica College known as the *SMC Early Childhood Education Center* project; (d) a project of the Norwalk-La Mirada Unified School District known as the *Los Alisos Middle School*

– *Portable Classroom Building* project; (e) a project of the Santa Monica-Malibu Unified School District known as the *Olympic High School* project; and (f) a project of the Santa Monica Unified School District known as the *Santa Monica High School – Samohi Utility Building Alteration* project.

7. When referenced collectively hereinafter, the Project Labor Agreements, Construction Master Labor Agreements, Trust Agreements and Subscription Agreements are referred to as "the Agreements.

8. The Agreements require employers, including the Employer, to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours worked by (or paid for) their employees who perform work covered by the Agreements ("Covered Work").

9. The Agreements require employers, including the Employer, to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.

10. The Agreements require employers, including the Employer, to pay interest on delinquency Monthly Contributions.  Under the Construction Master Labor Agreements and Trust Agreements, the trustees of the Trust Funds have the authority to set the interest rate and have set it at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  That is the rate

applicable to work under the Project Labor Agreements (which incorporate the Construction Master Labor Agreements and Trust Agreements by reference). Each Subscription Agreement requires payment of interest at 10% on delinquent Monthly Contributions due for work on the project to which it applies.

11. The Construction Master Labor Agreements and Trust Agreements (and thus also the Project Labor Agreements, which incorporate them by reference) require employers, including the Employer, to pay, for each Trust Funds separately, liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater. In addition, the Construction Master Labor Agreements and Trust Agreements – and thus also the Project Labor Agreements – require employers to pay fees for the submission of dishonored checks.

12. The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify. Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer. The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid. It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

13. The Construction Master Labor Agreements require employers, including the Employer, to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed. If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in an amount equal to the Monthly Contributions that would have been due if the entity had been signatory (plus interest, liquidated damages and audit fees thereon).

14. Under the terms of the Construction Master Labor Agreements, employers agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds. If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Trust Funds for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

15. The Agreements provide the Trust Funds with authority to examine the payroll and business records of employers, including the Employer, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds. The Construction Master Labor Agreements and Trust Agreements further provide that employers, including the Employer, must maintain records sufficient for the Trust Funds to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the additional amounts due, and that the Employer must pay the Trust Funds' audit fees if it is delinquent to the Trust Funds. The Trust Funds have delegated the authority to perform such audits to CLTF.

16. The Construction Master Labor Agreements and Trust Agreements

require employers, including the Employer, to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

## FIRST CLAIM FOR RELIEF

### For Monetary Damages Due to Employee Benefit Plans

[29 U.S.C. §§ 185, 1132(g)(2) and 1145]

17.  CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 16 above as if fully set forth here.

18.  The Employer has failed to timely submit Monthly Contributions due by it to the Trust Funds.  Pursuant to the Agreements and ERISA sections 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, the Employer owes the Trust Funds a known amount of $46,816.92 for unpaid or late-paid Monthly Contributions and related damages (and/or late-submitted Monthly Reports) for some or all of the months of January 2018 through April 2022 ("Known Delinquency").  The Known Delinquency consists of: $10,878.84 in unpaid Monthly Contributions; $3,964.53 in interest (through November 14, 2022); $29,473.55 in liquidated damages; and $2,500.00 in audit fees.

19.  The portions of the Known Delinquency due for months prior to December 2019 are known to be due based on an audit of the Employer conducted by CLTF ("Audit").  The portions of the Known Delinquency due for months prior to December 2019 were not known to CLTF or the Trust Funds prior discovery through the Audit.  CLTF's initial request to the Employer for it to produce records for the Audit was made in April or May 2018.  Insufficient records were produced by the Employer for the Audit.  Additional records were produced by the Employer

in January 2020, after which CLTF determined amounts due by the Employer based on the limited records produced and the Audit was initially billed to the Employer in April 2020.

20. CLTF will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the Employer, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the Employer (or lower-tier subcontractors). If deemed necessary by the Court, CLTF will amend its complaint to add any additional amounts determined to be due. Any and all conditions to the Employer's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the Trust Funds have been met.

21. Under the terms of the Agreements and ERISA section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), CLTF is entitled to an award of its attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**For Specific Performance of Obligation to Produce Records for Audit**

[29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E)]

22. CLTF repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 21 above as if fully set forth here.

23. CLTF requests that the Court exercise its authority under ERISA

sections 502(a)(3) and (g)(2)(E), 29 U.S.C. §§ 1132(a)(3) and (g)(2)(E) to order the Employer to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for CLTF to complete an audit to determine if additional amounts are due.

24.  An award of attorneys' fees and costs is provided for by Agreements and under ERISA sections 502(g)(1) and/or (g)(2), 29 U.S.C. § 1132(g)(1) and/or (g)(2).

**WHEREFORE, CLTF prays for judgment as follows:**

ON CLTF'S FIRST CLAIM FOR RELIEF

[For Monetary Damages Due to Employee Benefit Plans]

A. For $10,878.84 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B. For $3,964.53 in interest through November 14, 2022 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue from November 14, 2022, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C. For $29,473.55 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the Trust Funds separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D.  For $2,500.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E).

E.  For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, insufficient funds check fees, and amounts owed as a result work performed by any subcontractors of the Employer (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

F.  For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

G.  For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

<u>ON CLTF'S SECOND CLAIM FOR RELIEF</u>

[For Specific Performance of Obligation to Produce Records for Audit]

A.  For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the Employer and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the Employer's records from at least September 1, 2015 through the date of the audit, to fully cooperate with CLTF with respect to the audit in order for CLTF to determine the total amount due to the Trust Funds by the Employer, and, specifically, to produce to CLTF the following payroll and business records – and any other records determined by CLTF to be necessary to conduct a full audit – for

inspection, examination and copying:

     A.1.   All of the Employer's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the Employer, its employees, its subcontractors, its lower-tier subcontractors and the employees of the Employer's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the Employer, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the Employer, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

     A.2.   All of the Employer's job files for each contract, project or job on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the Employer and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the Employer's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the Employer, its employees, its

subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

      A.3.   All of the Employer's records related to cash receipts, including but not limited to the Employer's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

      A.4.   All of the Employer's bank statements, including but not limited to those for all checking, savings and investment accounts;

      A.5.   All of the Employer's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

      A.6.   All collective bargaining agreements between the Employer and any trade union, and all records of contributions by the Employer to any trade union trust fund; and

      A.7.   All records related to the formation, licensing, renewal or operation of the Employer.

   B.   For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

   C.   For such other relief that this Court deems appropriate, pursuant to any

authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

DATED: November 14, 2022

REICH, ADELL & CVITAN
A Professional Law Corporation

By:       /s/
    PETER A. HUTCHINSON
    Attorneys for Plaintiff

473566.3